UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MERLIN FARNHAM, | ) | CASE NO. 1:12-CV-704 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Merlin Farnham's application for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## I. INTRODUCTION & PROCEDURAL HISTORY

On June 12, 2008, Plaintiff Merlin Farnham ("Plaintiff" or "Farnham") applied for Disability Insurance Benefits alleging that he became disabled on October 30, 2007, due to degenerative disc disease, spinal stenosis, and acute pain and muscles spasms of the lower back, legs, and feet (Tr. 62, 94). Farnham's application was denied initially on September 4, 2008, and again on reconsideration on January 16, 2009. (Tr. 62, 69). The Social Security Administration subsequently granted Plaintiff's request for a hearing before an Administrative Law Judge. (Tr. 80).

On September 9, 2010, an Administrative Law Judge (the "ALJ") convened a video hearing to evaluate Plaintiff's application. (Tr. 26). Plaintiff, represented by counsel, testified

1

at the hearing.  (*Id.*).  Vocational expert Lynn Smith (the "VE"), also testified at the proceeding. (*Id.*).

On October 24, 2010, the ALJ issued an unfavorable decision, determining that Plaintiff was not disabled.  (Tr. 8).  Following this decision, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr.1).  The council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (*Id.*).  Plaintiff now seeks judicial review of the Commissioner's final decision denying his application for benefits.  Judicial review is proper pursuant to 42 U.S.C. § 405(g).

Plaintiff, born on February 12, 1957, was fifty years old on the alleged disability onset date.  (Tr. 94).  Plaintiff has a college education.  (Tr. 32).  He has past experience working as a data analyst and a computer technician (Tr. 48).

A. Relevant Medical History[1]

Prior to his alleged onset date, in January 2006 Plaintiff saw Kimberly C. Sheets, D.O., Plaintiff's primary care physician, for back pain. (Tr. 203).  His patient history indicates Plaintiff suffered a back injury when he was twenty-five years old, involving dropping a heavy box down stairs.  (*Id.*).  Observing narrowing of L1-L2 of the spine, Dr. Sheets diagnosed Plaintiff with lower back pain/lumbalgia, and sciatica on follow-up.  (Tr. 203-205, 207).  Plaintiff was prescribed pain medication and ordered an MRI, which he initially declined for economic reasons.  (Tr. 203, 205).  In August 2007, physical exam revealed some paraspinous muscle tenderness in the lumbosacral region, and a straight leg raise test was negative.  (Tr. 212).  Dr. Sheets referred Plaintiff to K. Kuschnir, M.D., a back specialist to take over management of his

---

[1] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

back pain.  (*Id.*).  Plaintiff returned to Dr. Sheets in July 2008, requesting completion of disability papers.  In her report, Dr. Sheets lists that Plaintiff suffers from degenerative disc disease with pain, and notes Plaintiff is seeing pain management specialist and spine surgeon Dr. Gurely, and receiving physical therapy.  (Tr.  212-213).

On referral, Plaintiff saw Dr. Kuschnir in September 2007.  After initial exam he ordered an MRI and, observing L1-L2, and possibly L4-L5, degenerative problems, subsequently performed a diskogram in October 2007.  (Tr. 220, 225).  The diskogram revealed degeneration at L1-L2, causing most of Plaintiff's pain, with some less severe problems at L4-L5 (Tr. 220).

In January 2008, Jerold Gurley, M.D., performed lumbar decompression and spinal fusion.  (Tr. 246).  During follow-up exams in February and May 2008, Dr. Gurley reported positive progress, but very slow recovery from a pain and functional standpoint, instructed Plaintiff to gradually increase ambulatory activities.  (Tr. 508, 526).  Exam notes indicated considerable improvement of Plaintiff's upper back pain, but slight worsening of symptoms along the L4-L5 region.  Dr. Gurley reported positive surgical results, including good positioning and no evidence of implant problems, as well as good fusion consolidation and (in August 2008) development of anterior interbody bridging fusion. (Tr. 507-508, 526). In April 2008, Dr. Gurley provided Plaintiff could work from home, with the following limitations:  no excessive bending, lifting, or twisting; no lifting over ten pounds; and requires frequent position changes.  (Tr. 550). Plaintiff's return to work note also indicated Dr. Gurley planned to perform additional surgery on Plaintiff early in 2009.  (*Id.*).

At a subsequent follow-up in October 2008, Dr. Gurley determined no further surgery was necessary.  (Tr. 505).  Imaging showed moderately severe polyperipheral neuropathy of the lower extremities (for which he was referred to his primary care physician and neurologist), and

3

mild to moderate lumbar stenosis of L4-L5, not of surgical grade.  (*Id.*).  Plaintiff disagreed with Dr. Gurley's opinion that no further surgery was necessary and that there was "clearly no pathological processes going on," and was thus referred for a second surgical opinion.  (*Id.*).

Also in October 2008, John Schnell, M.D., a neurologist, performed a nerve conduction study, revealing moderately severe peripheral sensory neuropathy in Plaintiff's foot and ankle, likely caused by peripheral arterial insufficiency.  (Tr. 511).  The report further stated Plaintiff did not have measurable lumbo-sacral root injury or radiculopathy, and results were consistent with a normal lumbar root system.  (*Id.*).  As reported in Dr. Sheets' records, a second neurologist, Dr. Lewton, opined Plaintiff had very mild peripheral neuropathy.  (Tr. 557).

Following surgery, Plaintiff began physical therapy at Wadsworth Family Physical Therapy.  In July 2008, physical therapy notes show Plaintiff reports being able to sit for five to ten minutes before experiencing severe pain, has soreness after therapy sessions, but feels 25% better overall.  (Tr. 512).  Doctor evaluation notes indicate Plaintiff continued physical therapy at an out-patient facility, as well as using a home gym, through June 2009, and also receives massage therapy.  (Tr. 575).

In January 2009, Dr. Sheets referred Plaintiff to a pain management specialist, Tony Labadidi, D.O., seeking pain treatment alternatives to Vicodin, which Plaintiff had previously stopped taking.  (Tr. 557-58).  After Plaintiff refused his recommendation of injections, Dr. Lababidi prescribed Lyrica and Mobic for pain and inflammation.  (Tr. 560).  Plaintiff's dosage was reduced after he reported his medication was too strong.  (Tr. 563).  Records  indicate when Plaintiff last saw Dr. Lababidi in March 2009, he became upset when Dr. Lababidi "would not [change] record information so that he could get Disability," and that Dr. Lababidi found no reason to keep Plaintiff off work.  (Tr. 591).

4

After denying Plaintiff's request for another MRI, Dr. Sheets referred him to orthopedic surgeon Scot Miller, D.O., who began treatment in June 2009.  His initial examination revealed normal gait and station, no abnormalities of his head, neck, spine, or extremities, minimal restriction to his range of motion for all major joints, normal motor examination and reflexes, as well as normal cervical spine mobility.  (Tr. 584). Additionally, straight leg raising was bilaterally negative.  (*Id.*).  Imaging revealed a small disc protrusion and evidence of an old injury and stenosis.  (Tr. 585).  Plaintiff refused Dr. Miller's imaging recommendations (including a CT myelogram) and iterated he wanted an MRI only.  (*Id.*).  Follow-up notes dated August 2009 show Plaintiff returned to Dr. Miller again requesting an MRI, and again refusing Dr. Miller's recommendation that he instead get a CT myelogram.  (Tr. 579).  Additionally, notes indicate Plaintiff's emotionally-charged demands that his documented refusal to obtain the CT myelogram be stricken from the record.  (579-580).

In September 2009, records indicate Plaintiff stated he no longer wanted or needed to go to pain management.  (Tr. 591).  In February 2010, Plaintiff began seeing Dr. Darrell Widmer, a family practitioner, complaining of back pain and seeking a thoracic MRI.  (Tr. 601).  Exam notes show Plaintiff is able to get on and off the exam table without too much difficulty, but shows positive straight leg raises bilaterally.  (*Id.*).  Examination notes dated May 2010 show negative straight leg raises bilaterally.  (*Id.*).  Dr. Widmer completed paperwork for Plaintiff's long term disability claim, opining Plaintiff is unable to stand or sit longer than fifteen minutes, and is restricted to no lifting.  (Tr. 605-606).

In January 2008, Dr. Gurley completed an attending physician statement on behalf of Plaintiff's long term disability claim.  (Tr. 286-287).  This statement, which includes Dr. Gurley's opinion at that time that Plaintiff would need to undergo further surgery, provided for

5

the following functional limitations:  ability to sit, stand, or walk up to one hour intermittently; no climbing, or repetitive pushing or pulling; occasionally twist, bend, or stoop; and could drive limited amounts, but not for long distances.  (Tr. 286-287).  The report provided no limitation on Plaintiff's ability to reach above shoulder level.  (*Id.*).

Dr. Sheets completed a Medical Source Statement in November 2008, and in December 2008, wrote a letter to Disability Determination Services regarding Plaintiff's physical limitations.  (Tr. 334-335).  This letter specifies that Plaintiff's treatment is actively managed by Drs. Gurley and Lewton (a neurologist), and that his response to treatment is unknown to her. (Tr. 334).  However, she provides that Plaintiff has the following work related functional limitations:  Plaintiff is able to sit ten minutes without interruption and one hour total out of an eight hour workday; he is able to walk one-half hour at a time, four hours total out of an eight hour work day; can lift five pounds occasionally, five pounds frequently, and can carry five pounds occasionally; he can reach occasionally, handle frequently, feel without limitation, has unlimited fine and gross manipulation, but limited ability to push and pull; and his ability to travel is limited by his limited ability to sit.  (Tr. 334-335).  The report further states Plaintiff requires a sit/stand option, experiences moderate pain, but does not require a cane.  (Tr. 336). Medical evidence in support of her assessment is limited to Plaintiff's pain and weakness post spinal fusion.  (Tr. 335-336).

A second assessment by Dr. Sheets in June 2009 provided for further limitations, including:  limited standing and walking for five minutes at a time, up to thirty minutes daily; limited sitting to fifteen minutes at a time, up to forty-five minutes daily; no climbing, stooping, crouching, pushing, pulling; and only occasional balancing, kneeling, crawling, and reaching. (Tr. 570-571).  This report further provides Plaintiff experiences moderate to severe pain, has

6

been prescribed a cane, brace, and TENS unit, and that he takes medication that may interfere with his ability to work.  (Tr. 571).

On September 1, 2008, state agency reviewer, Walter Holbrook, M.D., assessed Plaintiff's physical residual functional capacity to work.  (Tr. 492-498).  Dr. Holbrook's report limited Plaintiff to sitting up to six hours per day, standing or walking up to two hours per day, occasionally lifting or carrying up to twenty pounds, and frequently lifting or carrying ten pounds.  (Tr. 493).  He reported Plaintiff as having no limitations on pushing and pulling.  (*Id.*).  Dr. Holbrook concluded Plaintiff could perform within the limits of the RFC because Plaintiff can walk without aid and has normal upper extremity strength.  (Tr. 498).  These findings were affirmed on reconsideration by W. Jerry McCloud, M.D., who discredited the opinions of Dr. Sheets because she did not treat Plaintiff, did not know Plaintiff's response to treatment, and did not manage Plaintiff's care.  (Tr. 551).

## II.  ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law.  At step one of the five-step sequential analysis,[2] the ALJ found that Plaintiff meets the insured status

---

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

requirements of the Social Security Act through December 31, 2012.  (Tr. 13). At step two, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 30, 2007.  (*Id.*).  At step three, the ALJ ruled that Plaintiff suffered from the following severe impairments:  lumbar and cervical degenerative disc disease, lumbar stenosis and spondylosis, status post lumbar fusion surgery in January of 2008, and polyneuropathy. (*Id.*).  She further found Plaintiff suffers from the following non-severe impairments:  gastroesophageal reflux disease (*Id.*).  At step four, the ALJ determined that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13-14).  Based upon these findings, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  (Tr. 14).  He can sit a total of six hours in an eight-hour workday; can stand and/or walk a total of two hours in an eight-hour workday; cannot perform excessive or continuous bending or stooping; cannot lift more than ten pounds; can occasionally twist with trunk area and back; and needs to alternate between sitting and standing at least every two hours for five minutes at a time, but he can remain at his work station.  (*Id.*).  Accordingly, at step four, the ALJ found Plaintiff is able to perform his past relevant work as a data analyst, which does not require the performance of work-related activities precluded by Plaintiff's RFC.  (Tr. 17).  Based on the forgoing, the ALJ determined Plaintiff has not been

---

(4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

disabled pursuant to the Social Security Act from the alleged onset date of October 30, 2007 through the date of her decision.  (Tr. 17).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.

1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

V.  ANALYSIS

Plaintiff seeks review from the Court based on the following arguments:  (1) the ALJ improperly evaluated Plaintiff's complaints of pain; (2) the ALJ improperly weighed the opinions of Plaintiff's treating physicians, Dr. Gurley and Dr. Sheets; and (3) the ALJ's determination that Plaintiff's cervical degenerative disc disease and lumbar spinal stenosis did not meet Listing 1.04A and 1.04C is not supported by substantial evidence.

A.  Credibility of Plaintiff's Statements of Pain

This circuit follows a two-part test in evaluating a claimant's subjective allegations regarding disabling symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c);  *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  First, the ALJ must determine whether there is objective medical evidence showing the existence of an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Id.*  Second, if the ALJ finds that an underlying impairment exists, then the ALJ must evaluate (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity it can reasonably be expected to produce the alleged disabling pain.  *Id.* The ALJ will evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work.  20 C.F.R. §§ 404.1529(c), 416.929(c).   In evaluating the claimant's symptoms, the ALJ should

consider the individual's daily activities, the location, duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

Because the ALJ has the opportunity to observe the claimant's demeanor during the hearing process, he is best equipped to evaluate the witness' credibility.  *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247-48 (6th Cir. 2007).  Yet, the ALJ is not permitted to make credibility determinations based upon "intangible or intuitive notion[s]" about the individual.  *Id.*  Instead, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

The ALJ's credibility determination regarding Plaintiff's allegations of pain are supported by sufficient evidence.  Utilizing the two-step test outlined above, the ALJ determined the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (Tr. 15).  However, the ALJ found claimant's statements concerning the intensity, persistence and limiting effects of his symptoms *not credible* to the extent they are inconsistent with her RFC assessment.  (*Id.*).  In making this determination, the ALJ explained the record, including both objective medical evidence and Plaintiff's statements, indicates successful treatment of his conditions, and that his impairments are not as debilitating as alleged.  (*Id.*).  The ALJ points to treatment records from Dr. Gurley stating Plaintiff has "gone on to a

11

good early clinical result," including no evidence of problems with his implant, and that his "fusions are consolidating nicely." (Tr. 15, 298-299). Also relevant is Dr. Gurley's determination that, despite Plaintiff's continued complaints of pain, he did not recommend further surgery and noted there "is clearly no pathological process going on." (Tr. 15, 505). Further, the ALJ points to an MRI from June 2009 showing mild damage and changes to his spine, compared with past images. (Tr. 16, 566-567).

The ALJ also found Plaintiff's statements and "conservative treatment option of pain medication" inconsistent with his claims of debilitating pain. (Tr. 16). On April 10, 2008, Plaintiff told Dr. Gurley that he was significantly improved following surgery, compared to his preoperative level of pain and functioning. (Tr. 15, 299). After prescribed medication to alleviate his pain, Plaintiff told Dr. Lababidi, his pain management specialist, that the medication was too strong and he wanted his dosage decreased. (Tr. 15, 563). Further, Plaintiff rejected doctor recommended injections to treat his pain. (Tr. 574). In January and June of 2009, Plaintiff described his current pain level at 3 out of possible 10. (Tr. 16, 561, 583).

Plaintiff also fails to present sufficient evidence to undermine the ALJ's finding that the record as a whole suggests Plaintiff exaggerated his restrictions on his abilities to perform daily living and work activities. At the hearing, Plaintiff testified he is able to drive (and that he drove himself thirty miles to the hearing), can bathe and dress himself without assistance, can cook a little, uses his laptop computer to pay bills, enjoys watching television and reading, and does not require a cane or assistive device to ambulate. (Tr. 16, 41-45). He was returned to work, with restrictions, by Dr. Gurley in April 2008, and Plaintiff acknowledged himself he could return to work with accommodations (Tr. 16, 264). The ALJ also found the level of strength and flexibility presented by Dr. Miller in June 2009 suggests his limitations were not as limiting as

12

Plaintiff alleged, and found no credible evidence to support allegations of falling due to back and leg pain, debilitating side effects from medications, or that Plaintiff was instructed to lie down during the day or to refrain from any daily living activities.  (Tr. 16).

Plaintiff's claim that the ALJ's failure to mention and analyze Plaintiff's pain medication and side effects, limitations on Plaintiff's daily activities, and objective findings showing ongoing lumbar and cervical nerve compression and polyperipheral neuropathy, is without merit. It is well-established that an ALJ can consider the entire record without directly addressing every piece of evidence therein.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  Here, as stated in the preceding paragraph, it is clear from her decision that the ALJ considered plaintiff's medications and side effects (despite not listing and analyzing each medication individually), as well as limitations on his daily activities, and found no credible evidence in support of Plaintiff's allegations.  (Tr. 16).  In addition, though Plaintiff identified several medical records which he claims bolsters the credibility of his statements regarding pain from his lumbar and cervical nerve compression and polyperipheral neuropathy, none of these medical records provide evidence sufficient to override the ALJ's determination based on her analysis of all the medical evidence taken as a whole.  In fact, some of these records were specifically mentioned by the ALJ in her determination, or fall outside the relevant time period. (Tr. 16, 509-511, 517, 568-569, 632-633).  Specifically, Plaintiff points to treatment notes of Dr. Miller, dated June 2009, that the ALJ discusses in detail in her credibility discussion, as well as MRI results dated November 2010, which fall outside of the relevant time period.  (Tr. 16, 568-569, 632-633).

Based on the above analysis, the ALJ's finding that Plaintiff's allegations as to the severity of his pain are not credible is supported by substantial evidence.  Plaintiff's argument to

13

the contrary is not well-taken.

B.  Treating Physicians

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "Treating Source Rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(c)(2).  Opinions from such physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Id.*

When an ALJ determines a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion.  *Id.* Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id.*

Plaintiff contends that the ALJ erred by assigning little weight to the opinion offered by Dr. Sheets, and considerable, but not controlling, weight to the opinion of Dr. Gurley.  (Tr. 16). However, based on the following analysis, the ALJ's decision is supported by substantial evidence and Plaintiff's assertion of error is rejected.

1.  Dr. Gurley

14

The ALJ properly applied the treating source rule to her assignment of "considerable weight" to the opinion of Dr. Gurley.  Though opinions from a claimant's treating source are of particular relevance, such opinions are not automatically entitled to controlling weight if not supported by objective medical evidence or if the findings are inconsistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c), 416.927(c).  "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Wilson*, 378 F.3d at 544 (citing SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Plaintiff's contention that the ALJ did not provide good reasons for not giving Dr. Gurley's full opinion controlling weight. is not well taken.   In her assessment, the ALJ recognizes that Dr. Gurley, a specialist, treated Plaintiff "over the course of many months," and that his conclusion, supported by the record as a whole, is consistent with the limitations set forth by the RFC assessment.  (Tr. 16, 550).  However, full weight was not afforded to Dr. Gurley's functional capacity assessment because it was provided in April 2008, just four months after Plaintiff's back surgery.  (Tr. 16, 286, 550).  The ALJ's decision explicates that substantial evidence shows significant improvement in Plaintiff's condition in the time between Dr. Gurley's assessment and the time of the hearing.   Additionally, Dr. Gurley's assessment indicates he expects improvements in the areas reviewed in the report, and his later notes contradict his April 2008 finding that Plaintiff would require further surgery in 2009.  (Tr. 286-287, 505, 550).  His April 2008 functional capacity assessment is thus inconsistent with other substantial evidence in the record.

Plaintiff's argument that the ALJ "incompletely reported Dr. Gurley's opinion but noted only those portions which supported her ultimate conclusion" has no merit. While it is true that a few limitations provided in this assessment conflict with the ALJ's ultimate RFC finding—specifically, that Plaintiff must change position every hour, rather than every two hours, and that he has limitations on his abilities to push and pull—these are precisely the findings that the ALJ gives less weight for the reasons stated above. Based on her analysis of the record as a whole, the ALJ properly weighed the evidence presented in drawing her conclusion that Plaintiff's condition had improved since these limitations were set out. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284-85 (6th Cir. 2009) (finding no improper "cherry picking" where ALJ properly weighed the evidence presented in Plaintiff's treatment records).

Further, Plaintiff's argument that the ALJ did not address Dr. Gurley's restrictions on Plaintiff's ability to reach has no basis. Dr. Gurley's reports do not indicate any such restriction, and rather opines he can reach above shoulder level. (Tr. 287, 550). Plaintiff points to no evidence on the record showing Dr. Gurley limiting Plaintiff's ability to reach, as would be inconsistent with the ALJ's RFC assessment.

### 1. Dr. Sheets

Dr. Sheets is Plaintiff's primary care physician. He saw her initially for his back pain, and she subsequently referred him to an orthopedic surgeon for further analysis and treatment. Plaintiff periodically returned to Dr. Sheets for paperwork and referrals, but she did not diagnose Plaintiff's back condition, did not actively manage Plaintiff's treatment for his back pain, and was uninformed as to Plaintiff's response to this treatment. (Tr. 334).

Plaintiff's argument that the ALJ did not properly assess Dr. Sheets' opinion under the treating source rule has no merit. The ALJ determined that her opinions are supported by very

16

few objective medical findings, and are contradicted by the findings of Drs. Gurley, Miller, and Lababidi, Plaintiff's treating specialists. (Tr. 16, 559-561, 564, 573-574, 579, 583-585). In support, the ALJ points to examination records of Dr. Miller and Dr. Lababidi, showing normal to mildly impaired function, and also to notes discussing Dr. Gurley and Dr. Lababidi's inability to provide medical support for Plaintiff's claims that he is unable to return to work. (*Id.*). Treatment notes further show Dr. Sheets refusal to make a different return to work determination, deferring to the opinions of Drs. Gurley and Lababidi (Tr. 574). This evidence on the record is sufficient to justify the ALJ's determination that Dr. Sheets opinion was not entitled to controlling weight.

Further, the ALJ's decision exemplifies her analysis of the requisite factors in assigning weight. First, the ALJ properly gives less weight to Dr. Sheets opinion because she is not a specialist, but rather only a general practitioner who referred Plaintiff to specialists for his back treatment and pain management. 20 C.F.R. § 404.1527(c)(5), (Tr. 16). Second, in addition to the above findings that Dr. Sheets opinion had little medical support and was inconsistent with other medical opinions, the ALJ found the limitations placed on Plaintiff's abilities by Dr. Sheets' assessment are not consistent with her analysis of Plaintiff's activities of daily living, or with the record as a whole. (Tr. 16-17). Accordingly, the ALJ's decision to give Dr. Sheets' opinion little weight is supported by substantial evidence.

In sum, it was reasonable for the ALJ to give only considerable weight to Dr. Gurley's opinion, and little weight to the opinion of Dr. Sheets. The ALJ properly applied the Treating Source Rule and considered the requisite factors in assigning each opinion its respective weight. She further provided sufficiently specific reasons to support her conclusions, which were supported by substantial evidence on the record.

C. <u>Plaintiff's Impairments Do Not Meet or Equal the Listings</u>

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listings of Impairments ("Listings") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listings recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 416.925(a), 404.1525(a).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 416.925(c)(3), 404.1525(c)(3).

A claimant will be deemed disabled if his impairment meets or equals one of these listings.  In order to "meet" a listing, the claimant must satisfy all of the requirements of that listing.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  A claimant who meets only some of the requirements of the Listing, "no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  However, if the claimant does not meet all of the requirements, he may still be deemed disabled if his impairments "medically equal" the listing in question.  20 C.F.R. §§ 416.926(b)(3), 404.1526(b)(3).  To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 416.926(a), 404.1526(a).  The claimant has the burden of proving a presumptively disabling impairment found in the Listings.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Plaintiff argues that the ALJ wrongly concluded that he did not meet or equal Listing 1.04(A) and 1.04(C).  Listing 1.04 covers the following:

18

Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 1.04.  The ALJ ruled Plaintiff did not meet or equal this listing because the record does not demonstrate compromise of a nerve root (including the cauda equine) or the spinal cord with additional findings of:  (A) nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle wekness) accompanied by sensory or reflex loss and, positive straight-leg

19

raising; (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication. (Tr. 14).  This finding is supported by evidence on the record, including lumbar and cervical MRI results showing normal sensory, reflex, and motor function, and no nerve impingement; EMG and nerve conduction studies establishing normal lumbar root system; consistent normal muscle strength; and some negative straight leg raising tests.[3]  (Tr. 225, 302, 511, 516-17, 560, 584, 599, 601).

To rebut the ALJ's findings that Plaintiff's cervical and lumbar degenerative disc disease does not meet Listings 1.04A and 1.04C, Plaintiff points to October 2008 and June 2009  MRI results, physical therapy notes, and doctors' notes including test results.  (Tr. 278, 337, 505, 509-511, 559-565, 568, 570, 578, 601).  Plaintiff argues that, in light of this evidence, the ALJ has no basis for her finding that Plaintiff does not meet the Listings criteria.  Plaintiff's argument is not well taken.

Based on the ALJ's analysis of the entire record, the evidence presented by Plaintiff to rebut the ALJ's Listings determination is insufficient to overturn her decision that Plaintiff did not meet his burden.  The medical evidence pointed to by Plaintiff was properly considered and weighed by the ALJ, including her analysis of the weight given to the medical source opinions, and Plaintiff's credibility.  Much of the evidence Plaintiff provides to support his argument comes from the opinion and notes of Dr. Sheets, which the ALJ gave little weight. (Tr. 16, 570) The October 2008 MRI includes Dr. Gurley's notes reflecting a positive prognosis and no further need for surgery.  (Tr. 505-507).  The June 2009 MRI shows only mild or slight abnormalities

---

[3] Some of Plaintiff's straight leg tests had positive results.  However, the medical records did not indicate whether the positive tests were performed in both the requisite sitting and supine positions, and some of the straight leg test results yielded negative results.  Positive results were not consistent.  (Tr. 213, 560, 584, 601).

(Tr. 568).  The physical therapy notes, which are from early in his surgical recovery period, include Plaintiff's own claims of pain (which the ALJ discredited) and also state Plaintiff was making good progress.  (Tr. 278). Similarly, the notes relied on by Plaintiff presented by Dr. Lababidi express Plaintiff's own discredited accounts of the extent of his pain, and show no abnormalities of the cervical or lumbar spine.  (Tr. 559-560).  Dr. Lababidi does note an antalgic gait, but finds no motor abnormalities, and Plaintiff's argument that he is unable to ambulate effectively, supported by his alleged use of a cane and opinion evidence by the discredited Dr. Sheets, is further discredited by physical therapy treatment notes and his own testimony that he does not require a cane and walks his child to school. (Tr. 42-43, 493, 559-560).  Further, the MRI report and opinion of Dr. Widmer, whose opinion the ALJ assigned little weight, is dated November 2010, and is outside the relevant time period.  (Tr. 632-634).  None of this evidence supports Plaintiff's claim that the ALJ's finding is not supported by sufficient evidence.

Additionally, the Disability Determination Service's State agency medical consultants, Dr. Holbrook and Dr. McCloud, whose opinions the ALJ gave considerable weight,  reviewed Plaintiff's medical records and concluded that Plaintiff did not meet or equal any listing.  (Tr. 60-61, 492, 551-556).  Both doctors signed off on "Disability Determination and Transmittal" forms (Forms SSA-831) indicating that Plaintiff is not disabled.  (Tr. 60-61).  The doctors' signatures on these forms signaled that each of them had considered the question of whether Plaintiff met or equaled a listing.  *See* SSR 96-6p, 1996 WL 374180, at *3 (1996) ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)…ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and

21

reconsideration levels of administrative review."); *Curry v. Sec'y of Health & Human Servs.*, No. 87-1779, 1988 WL 89340, at *5 (6th Cir. Aug. 29, 1988) (unpublished).

Much of the medical evidence Plaintiff points to was available to the doctors at the time of their assessments, either initially on September 2008, or on reconsideration on January 2009. (Tr. 278, 337, 499, 505, 509, 551).  The doctors were thus privy to the majority of the findings upon which Plaintiff relies, yet neither doctor found Plaintiff to meet or equal Listing 1.04. Additionally, the evidence dated after the reconsideration date, including the June 2009 MRI and notes from Drs. Miller and Lababidi, is insufficient to overcome the doctors' determinations, as discussed previously in this decision.  Thus, the opinions of Drs. Holbrook and McCloud provide substantial support for the ALJ's ruling that Plaintiff did not meet or equal Listing 1.04.

## VIII.  <u>DECISION</u>

For the foregoing reasons, the undersigned finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  <u>May 2, 2013</u>.